**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

JOHN PIRRAGLIA,

                Debtor.

**FOR PUBLICATION**

Chapter 13

Case No. 26-10274 (JPM)

*APPEARANCES*

**LAW OFFICE OF CHARLES A. HIGGS**
*Counsel for the Debtor*
100 S. Bedford Rd., Suite 340
Mount Kisco, NY 10549
By: Charles A. Higgs, Melissa Wotton

**MAURICE WUTSCHER LLP**
*Counsel for CFG Merchant Solutions, LLC*
5 Walter Foran Blvd., Suite 2007
Flemington, NJ 08822
By: Thomas R. Dominczyk

**TRIVELLA & FORTE, LLP**
*Counsel for Alma Bank*
1311 Mamaroneck Ave., Suite 170
White Plains, NY 10605
By: Arthur J. Muller III

**RENZULLI LAW FIRM, LLP**
*Counsel for New York City Marshal*
1 North Broadway, Suite 1005
White Plains, NY 10601
By: Troy D. Lipp

**CHAPTER 13 TRUSTEE**
*Standing Chapter 13 Trustee*
399 Knollwood Rd., Suite 102
White Plains, NY 10603
By: Thomas C. Frost

**MEMORANDUM OPINION AND ORDER DENYING THE DEBTOR'S EMERGENCY MOTION FOR AN ORDER SEEKING SANCTIONS FOR VIOLATING THE AUTOMATIC STAY AND GRANTING EXTENSION OF THE AUTOMATIC STAY TO NON-DEBTOR**

JOHN P. MASTANDO III
UNITED STATES BANKRUPTCY JUDGE

## I.    INTRODUCTION

Before the Court is the motion of the debtor John Pirraglia (the "**Debtor**"), dated April 10, 2026, seeking sanctions for alleged violations of the automatic stay (the "**Motion**").  (Dkt. No. 14).  The Motion seeks, among other relief, entry of an order: (i) holding CFG Merchant Solutions, LLC ("**CFG**"), the New York City Marshal (the "**Marshal**"), and Alma Bank (the "**Bank**" and, together with CFG and the Marshal, the "**Respondents**") in contempt for violating the automatic stay; (ii) compelling CFG to turn over all funds levied from a bank account maintained at Alma Bank (the "**Bank Account**"); (iii) directing Respondents to remove any restraints on the Bank Account; and (iv) imposing sanctions pursuant to 11 U.S.C. § 362(k).  (*Id.*).  The Court held a hearing on June 1, 2026 to consider the Motion (the "**Hearing**").

Having reviewed the parties' submissions, the arguments presented at the Hearing and in subsequent supplemental submissions, and the record as a whole, the Court finds that sanctions are unwarranted because the levy was directed at an account held in the name of non-debtor J.P.'s Inn, Inc. ("**J.P.'s Inn**"), and the Debtor has not sufficiently shown that the Respondents knowingly violated the automatic stay.  The Court further finds, however, that the record warrants limited prospective relief to protect any estate interest the Debtor may have in funds traceable to him personally.

For the reasons set forth below, the Motion is **DENIED** to the extent it seeks civil contempt and sanctions.  In addition, the Court will **GRANT** a temporary extension of the automatic stay to non-debtor J.P.'s Inn.

II.    **BACKGROUND**

J.P.'s Inn is a New York-based restaurant owned by the Debtor.  CFG is a creditor of both J.P.'s Inn and the Debtor.  On June 12, 2024, CFG obtained a judgment in the Supreme Court of the State of New York, Kings County, against J.P.'s Inn in the amount of $546,223.78, for which the Debtor is jointly and severally liable as guarantor (the "**State Court Judgment**").  (Dkt. No. 22, Ex. A).  On February 5, 2026, the state court issued an execution order authorizing the Marshal to levy on property of J.P.'s Inn, the judgment debtor in that proceeding (the "**Execution Order**").  (*Id*., Ex. B).  On February 10, 2026, the Debtor filed this Chapter 13 case.

On March 6, 2026, the Marshal levied on the Bank Account.  (Dkt. No. 22, Ex. B).  The Bank Account is held in the name of J.P.'s Inn.  The Debtor contends, however, that the account contains the Debtor's personal funds commingled with corporate funds; the personal funds include proceeds from an insurance settlement in relation to a car accident, paid to him personally.  (Dkt. No. 14).  On that basis, the Debtor argues that the Bank Account constitutes property of the estate under § 541(a), and that the levy therefore violated the automatic stay.  (*Id*.).

On April 10, 2026, the Debtor filed the Motion seeking emergency enforcement of the automatic stay against the Respondents.  (Dkt. No. 14).  The Motion asserts that the Respondents violated the stay by levying on the Bank Account after receiving notice of the Debtor's bankruptcy filing.  (*Id*.).  The Debtor seeks turnover of the levied funds, removal of restraints on the Bank Account, contempt findings, and sanctions under § 362(k).  (*Id*.).

On April 20, 2026, the Bank filed a response opposing the Motion (the "**Bank's Response**").  (Dkt. No. 17).  The Bank argues that the automatic stay does not protect non-debtors absent a showing of extraordinary circumstances, and that the Debtor has made no such showing.  (*Id*.).  As the Bank asserts, "[t]he fact that the Debtor chose to completely disregard the corporate

2

form and commingle personal and business assets in the same bank account, does not transform the business account into a personal account of the Debtor." (*Id*.). That same day, CFG filed a response supporting the Bank's position ("**CFG's Objection**"). (Dkt. No. 18). CFG argues that the Bank Account is held in the name of J.P.'s Inn, not the Debtor, and therefore is not property of the estate. (*Id*.). Because the automatic stay does not apply to non-estate property, CFG contends that no stay violation occurred. (*Id*.).

On April 22, 2026, the Debtor filed a reply (the "**Debtor's Reply**"). (Dkt. No. 20). The Debtor argues that the funds in the Bank Account are protected by the automatic stay because § 541(a) defines "property of the estate" to include "all legal or equitable interests of the debtor in property," regardless of who holds legal title. (*Id*.). The Debtor asserts that he has a direct interest in the funds in the Bank Account because it contains personal funds, including the insurance settlement proceeds paid to him personally. (*Id*.). The Debtor further argues that the Respondents had actual notice of the bankruptcy case and were required to cease collection activity upon receiving that notice. (*Id*.).

On May 1, 2026, CFG filed a sur-reply ("**CFG's Sur-Reply**"). (Dkt. No. 22). CFG argues that, under applicable New York law, "shareholders do not hold legal title to any of the corporation's assets," and that "assets held by corporate entities are not property of an individual shareholder's bankruptcy estate." (*Id*.) (quoting *In re Brizonova*, 592 B.R. 442, 462 (Bankr. E.D.N.Y. 2018) and *In re Dieffenbacher*, 556 B.R. 79, 85 (Bankr. E.D.N.Y. 2016)). CFG further asserts that it is undisputed that "the account at issue is titled solely in the name of [J.P.'s Inn]," and that the Debtor cannot transform the entire corporate account into property of his bankruptcy estate by commingling funds through "questionable accounting practices." (*Id*.).

On May 4, 2026, the Marshal filed a response opposing the Motion (the "**Marshal's Response**"). (Dkt. No. 23). The Marshal argues that the levy was directed at an account held in the name of J.P.'s Inn, the judgment debtor identified in the Execution Order, and that the Debtor has not established that any restrained funds are property of his bankruptcy estate. (*Id*.). The Marshal further asserts that it had no duty to investigate the beneficial ownership of funds held in a corporate account, and that its role was limited to enforcing the Execution Order against the account corresponding to the judgment debtor. (*Id*.).

At the Hearing held on June 1, 2026, the Court directed the parties to submit supplemental briefs on the issue of the potential extension of the automatic stay to non-debtor J.P.'s Inn. On June 4, 2026, the Debtor filed a supplemental brief (the "**Supplemental Brief**") in further support of the Motion. (Dkt. No. 31). The Supplemental Brief largely reiterates the arguments raised in the Motion and the Debtor's Reply: that the Debtor holds an equitable interest in the funds in the Bank Account, that such interest constitutes property of the estate under § 541(a), and that the Respondents violated the automatic stay by levying on the Bank Account without first seeking relief from this Court. (*Id*.). Relying on *In re Fogarty*, 39 F.4th 62 (2d Cir. 2022), the Debtor argues that the stay may be "violated by conduct directed at an asset nominally titled to a wholly-owned non-debtor entity in which the debtor holds an interest, and that a creditor who doubts whether an asset is protected must seek relief from the bankruptcy court rather than resort to self-help." (Dkt. No. 31) (citing *Fogarty*, 39 F.4th at 67). In the alternative, the Debtor requests that the Court "exercise discretion under § 105(a) to extend the stay" to non-debtor J.P.'s Inn generally. (*Id*.).

On June 9, 2026, the Bank filed a response to the Debtor's Supplemental Brief (the "**Bank's Supplemental Response**"). (Dkt. No. 33). The Bank reiterates the Respondents' position that

4

there can be no violation of the automatic stay unless the Debtor establishes that the property against which the Respondents acted constitutes property of the estate. (*Id.*). The Bank also argues that extending the automatic stay to non-debtors is "an extraordinary and drastic remedy" that should be applied "sparingly." (*Id.*) (citing *Third Eighty-Ninth Assocs.*, 138 B.R. 144, 146 (S.D.N.Y. 1992)). Finally, the Bank contends that the Debtor's reliance on *Fogarty* is misplaced because that case involved a foreclosure action "where the debtor was a named defendant and the case continued to be prosecuted against the debtor," whereas no foreclosure is at issue here. (*Id.*).

Also on June 9, 2026, CFG filed a response to the Debtor's Supplemental Brief ("**CFG's Supplemental Response**"). (Dkt. No. 34). CFG joins the Bank's position that sanctions under § 362(k) are unwarranted because the Bank Account is not property of the Debtor's estate. (*Id.*). CFG also argues that "there is no basis to extend the automatic stay to J.P.'s Inn," particularly where the Debtor has not filed a motion to extend the stay and instead raised stay extension for the first time as an alternative relief in the Supplemental Brief. (*Id.*). According to CFG, the Debtor's reliance on J.P.'s Inn as his principal source of income does not justify stay extension because, "[b]y that logic, every debtor could extend the automatic stay to their employers in order to protect their post-petition income, something that is not contemplated by the Bankruptcy Code." (*Id.*).

## III. LEGAL STANDARD

Section 362(a) of the Bankruptcy Code provides that, upon the filing of a bankruptcy petition, the petition "operates as a stay, applicable to all entities, … of the enforcement, against the debtor or against property of the estate, of a judgment obtained" before the petition date. 11 U.S.C. § 362(a)(2). Section 362(k), in turn, provides that "[a]n individual injured by any willful violation of the automatic stay shall recover actual damages, including costs and attorney's fees,

5

and in appropriate circumstances, punitive damages." *In re Wood*, 670 B.R. 700, 708 (Bankr. S.D.N.Y. 2025) (quoting 11 U.S.C. § 362(k)(1)).

A violation of the automatic stay is "willful" where there is "any deliberate act taken in violation of a stay, which the violator knows to be in existence." *In re Crawford*, 476 B.R. 83, 86 (S.D.N.Y. 2012) (citing *In re Crysen/Montenay Energy Corp.*, 902 F.2d 1098, 1105 (2d Cir. 1990)). By its terms, however, the automatic stay "applies only to debtors, property of the debtor, or property of the estate." *In re Calpine Corp.*, 365 B.R. 401, 408 (S.D.N.Y. 2007). Thus, a party cannot violate the automatic stay unless the challenged conduct was directed against the debtor, property of the debtor, or property of the estate.

## IV.    DISCUSSION

### A.  WHETHER THE BANK ACCOUNT IS PROPERTY OF THE ESTATE

The initial question presented is whether the funds in the Bank Account constitute property of the estate to which the automatic stay applies. For the reasons explained below, the Court finds that the Bank Account, as a whole, is not property of the estate merely because the Debtor owns J.P.'s Inn and uses the corporate account to also hold personal funds. The Debtor may have an equitable interest in identifiable personal funds deposited into the Bank Account, but that interest cannot be determined absent a trial or evidentiary hearing. *See Jewish Nat'l Fund (Keren Kayemeth Leisrael), Inc. v. Garland*, No. 83 CIV. 7796 (CBM), 1985 WL 163, at *3 (S.D.N.Y. Jan. 3, 1985) (noting that the determination of "equitable owner[ship] of the funds" in a disputed account is "a factual question"); *see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 608 B.R. 165, 177 (Bankr. S.D.N.Y. 2019) (noting that "ownership of the funds … is a disputed issue of fact"). On the present record, the Court cannot determine what portion, if any, of the restrained funds constitutes property of the estate.

Section 541(a)(1) of the Code defines property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the [bankruptcy] case." *In re Windstream Holdings, Inc.*, 105 F.4th 488, 496 (2d Cir. 2024) (citing 11 U.S.C. § 541(a)(1)); *see also In re Richardson Foods, Inc.*, 667 B.R. 500, 528 n.33 (Bankr. S.D.N.Y. 2025) ("Section 541(a) of the Bankruptcy Code states that property of the estate is comprised of all legal or equitable interests in property wherever located and by whomever held."). "Whether the debtor has a legal or equitable interest in property such that it becomes 'property of the estate' under section 541 is determined by applicable state law." *Wornick v. Gaffney*, 544 F.3d 486, 490 (2d Cir. 2008).

Under New York law, funds held in a bank account are presumptively owned by the account holder. *See Resource Group Int'l Ltd. v. Chishti*, 814 F. Supp. 3d 467, 478 (S.D.N.Y. 2026). Thus, where a bank account is titled in the debtor's name, deposits in that account are "presumptively considered property of the estate." *In re Grover*, 675 B.R. 270, 284 (Bankr. S.D.N.Y. 2025); *see also In re 1031 Tax Grp., LLC*, 439 B.R. 47, 70 (Bankr. S.D.N.Y. 2010). "This presumption holds even in cases where the account contains commingled funds." *Grover*, 675 B.R. at 284 (quoting *In re FBI Wind Down, Inc.*, 581 B.R. 116, 130 (Bankr. D. Del. 2018)).

The inverse is also true. Where an account is titled in the name of a non-debtor corporation, the account funds are presumptively corporate property, not property of the individual debtor who owns the corporation. *See Dieffenbacher*, 556 B.R. at 85 ("A corporation has a separate identity from its owners and, therefore, assets held by corporate entities are not property of an individual shareholder's bankruptcy estate."); *see also Marr v. Tumulty*, 256 N.Y. 15, 24 (N.Y. 1931) (holding that "[t]he title to corporate assets is not vested in the shareholders" but "in the corporation"). Under New York law, "shareholders do not hold legal title to any of the corporation's assets. Instead, the corporation—the entity itself—is vested with the title." *United States v. Wallach*, 935

7

F.2d 445, 462 (2d Cir. 1991); *see also Boise Cascade Corp. v. Wheeler*, 419 F. Supp. 98, 101 (S.D.N.Y. 1976) (recognizing the "longstanding principle of New York law that a corporation's property rights are entirely distinct from those of its shareholders and that even complete ownership … does not transfer the title to corporate property").

That presumption, however, may be rebutted. *See Axginc Corp. v. Plaza Automall, Ltd.*, No. 14-CV-4648 (ARR), 2022 WL 2135474, at *9 (E.D.N.Y. Feb. 20, 2022) (holding that "a presumption of an account holder's ownership may be rebutted by evidence of a third party's ownership of the funds"). "[The] presumption of ownership can be rebutted by evidence that another person really owns the property by demonstrating that she exercises control over the property or that the ostensible owner holds the property for his benefit." *In re DeFlora Lake Dev. Assocs., Inc.*, 628 B.R. 189, 199-200 (Bankr. S.D.N.Y. 2021) (internal quotations omitted). The party asserting ownership "bear[s] the burden of proving by a preponderance of the evidence" that he controls or otherwise holds an equitable interest in the disputed funds. *In re SRS Capital Funds, Inc.*, No. 20-72883-REG, 2022 WL 1110557, at *3 (Bankr. E.D.N.Y. Apr. 13, 2022); *see also DeFlora Lake*, 628 B.R. at 199-200.

Here, the Court finds that the Debtor has not established that the Bank Account as a whole is property of the estate. The account is titled in the name of J.P.'s Inn, a non-debtor corporation. That title gives rise to a presumption that the account funds are corporate property. The Debtor's ownership of J.P.'s Inn does not, standing alone, rebut that presumption or convert J.P.'s Inn's assets into property of the Debtor's bankruptcy estate.

The Debtor nonetheless argues that those funds constitute property of the estate because they include insurance settlement proceeds and rental payments paid to him personally, and that the Respondents knew of the existence of those funds. (Dkt. No. 20). That assertion may be

8

sufficient to raise a factual dispute as to whether some portion of the account is property of the estate. If the Debtor can identify and trace personal funds deposited into the Bank Account, he may have an equitable or beneficial interest in those specific funds sufficient to bring them within the scope of § 541(a), even though the account is titled in the name of J.P.'s Inn. *See SRS Capital Funds*, 2022 WL 1110557, at *5; *see also Peterson v. Islamic Republic of Iran*, No. 13-CV-09195 (LAP), 2026 WL 891136, at *13 (S.D.N.Y. Mar. 31, 2026) (noting that a person may be an "equitable" or "beneficial owner" of property, "even though legal title may belong to someone else").

But that does not mean that the entire Bank Account becomes property of the estate. Courts have consistently held that commingling a debtor's funds with a non-debtor's funds, or with funds held for a non-debtor's benefit, does not alter the character of the funds or transform the account into property of the debtor's estate. *See, e.g., In re CMC Telecom, Inc.*, 383 B.R. 52, 64 (Bankr. E.D. Mich. 2008) (holding that "[t]he act of merely depositing funds into a bank account does not alter … the nature of [the debtor's] interest in the funds" and that the "debtor's mere possession of the funds and commingling the money in a general operating account does not make the funds property of the estate" within the meaning of § 541(d)); *In re Dreier LLP*, 452 B.R. 391, 419 (Bankr. S.D.N.Y. 2011) (holding that the "commingling of funds" by a debtor in a single account "does not destroy or alter the nature of the deposited funds").

To establish that any portion of the disputed funds constitutes property of the estate, the Debtor must identify the source, amount, and timing of the personal funds allegedly deposited into the Bank Account; show that those funds remained in the account when the levy occurred; and trace the restrained funds to his personal property rather than to J.P.'s Inn's corporate assets. *See, e.g., DeFlora Lake*, 628 B.R. at 199-200; *SRS Capital Funds*, 2022 WL 1110557, at *3; *Axginc*

9

*Corp.*, 2022 WL 2135474, at *9.  The Debtor has not made that showing.  At most, the Debtor has asserted a potential estate interest in some portion of the funds held in the Bank Account.  That asserted interest depends on proof of ownership and tracing.

The record confirms why tracing is necessary.  According to CFG's Sur-Reply, the Bank Account held $15,032.28 at the time of the levy, far less than the $546,223.78 judgment debt owed to CFG.  (Dkt. No. 22).  CFG also notes that the account had significant business activity in January 2026, including $77,866.02 in deposits and $71,110.50 in withdrawals, and argues that the Debtor cannot plausibly claim that all deposits were estate property or that all withdrawals were for personal expenses.  (*Id*.).  CFG further asserts that the account balance increased from $7,311.22 on January 31, 2026 to $15,032.28 on March 6, 2026, leaving an unexplained deposit of $7,721.06 that has not been shown to be estate property.  (*Id*.).  Those discrepancies cast doubt on the Debtor's claim that the Bank Account, as a whole, is property of the estate.  They also underscore that the Court cannot determine, on the present record, whether the restrained funds are corporate funds, personal funds, or some combination of both.

At this juncture, the Court finds that the Bank Account remains presumptively property of J.P.'s Inn.  The Debtor may have an equitable interest in identifiable personal funds deposited into that account, but only to the extent those funds can be traced and distinguished from corporate funds.  At this time, the Court cannot determine what portion, if any, of the levied funds constitutes property of the estate.  Ownership of the restrained funds is a factual dispute that cannot be resolved without a trial or evidentiary hearing.

The Debtor's reliance on *Fogarty* does not alter that conclusion.  The Debtor argues that *Fogarty* prohibits "self-help" and requires the Respondents to seek relief from the automatic stay before levying on the Bank Account.  (Dkt. No. 31).  The Court disagrees under the facts of this

case.  In *Fogarty*, the challenged creditor conduct involved a foreclosure sale of real property owned by a non-debtor LLC in which the individual debtor held a 99% membership interest, and where the debtor resided at the property as a tenant.  *See Fogarty*, 39 F.4th at 69.  The debtor's residence at the property was undisputed.  *See id*.  Based on those facts, the United States Court of Appeals for the Second Circuit held that the foreclosure violated the automatic stay because the debtor was "a named party in the foreclosure proceedings" and held a possessory interest in the real property as a tenant.  *Id*.  Thus, the debtor's "possessory interest as a tenant in the Property was part of her bankruptcy estate and protected by the automatic stay."  *Id*. at 71.

This case presents a materially different question.[1]  The property at issue here is not real property at which the Debtor resides or holds an undisputed possessory interest.  It is a corporate

---

[1]      Certain language in *Fogarty*, read broadly, could suggest that any proceeding in which the debtor is named is stayed, even where the underlying property is held by a non-debtor.  In *Fogarty*, the creditor argued that the foreclosure did not violate the automatic stay because it was an "*in rem* proceeding" against property owned by a non-debtor entity, and because the debtor was named "only as an interested party" whose bankruptcy estate was not affected.  *Fogarty*, 39 F.4th at 74. The Second Circuit rejected that argument, explaining that § 362(a) "draws no textual distinction between *in rem* and *in personam* proceedings in which the debtor is a named party, nor does it inquire into why the debtor was named as a defendant in an action or proceeding."  *Id*.  The *Fogarty* Court further noted that, "under Section 362(a)'s plain text, any action or proceeding 'against the debtor' is stayed, regardless of whether the debtor was purportedly named as merely an interested or nominal party or as some other kind of defendant."  *Id*.  Broadly construed, *Fogarty* could be understood to establish a bright-line rule that any legal action naming a debtor is stayed, even where the action is directed only at non-debtor property, so long as the debtor has a possessory interest in the non-debtor property.  *See id*. at 76 (noting that *Fogarty* "effects a bright-line rule").
        But *Fogarty* is distinguishable from this case. *Fogarty* involved a foreclosure sale of real property in which the debtor had an undisputed possessory interest.  That interest was property of the debtor's estate and therefore protected by the automatic stay.   *See Fogarty*, 39 F.4th at 71 (citing *In re 48th St. Steakhouse, Inc*., 835 F.2d 427, 430 (2d Cir. 1987)).  Because the debtor resided in the property as a tenant, foreclosure would necessarily extinguish or otherwise interfere with that possessory interest.  *See id*.  Indeed, the Second Circuit emphasized that the foreclosure would "significantly lessen the barriers to evicting" the debtor under New York law and thereby interfere with her possessory interest in the property.  *Id*. at 70.  By contrast, no comparable possessory interest is at stake here.  The Bank Account is not real property occupied by the Debtor; it is a corporate bank account titled in the name of non-debtor J.P.'s Inn.  Whether any portion of

bank account titled in the name of non-debtor J.P.'s Inn.  Under New York law, funds held in an

account titled to a non-debtor corporation are presumptively corporate property.  *See, e.g.*, *Chishti*,

814 F. Supp. 3d at 478; *Grover*, 675 B.R. at 284; *1031 Tax Grp.*, 439 B.R. at 70.  A party asserting

equitable or beneficial ownership of those funds must rebut that presumption by a preponderance

of the evidence.  *See, e.g., DeFlora Lake*, 628 B.R. at 199-200; *SRS Capital Funds*, 2022 WL

1110557, at *3.  That issue was not presented in *Fogarty*.  Here, the Court holds only that, on the

present record, the Debtor has not established what portion, if any, of the restrained funds

constitutes property of the estate.  The Court does not hold that the Debtor lacks any equitable

interest in funds held in the Bank Account.  *Fogarty* therefore cannot provide a basis for the

Debtor's claim that the Respondents violated the automatic stay.

Because the automatic stay does not protect non-estate property from levy, the Debtor

cannot establish a stay violation, let alone a willful violation under § 362(k), absent a showing that

the Respondents acted against property of the estate.  *See In re Altchek*, 124 B.R. 944, 958 (Bankr.

S.D.N.Y. 1991) (holding that there can be "no violation of the automatic stay" where the funds

transferred "are not property of the estate"); *see also In re Elegant Merch., Inc.*, 41 B.R. 398, 399

(Bankr. S.D.N.Y. 1984) (holding that where funds "are not property of the estate within the

---

the account is property of the Debtor's estate depends on tracing and proof of equitable ownership—issues not presented in *Fogarty*.

Other courts have also considered the application of *Fogarty*.  In *Norton*, the United States District Court for the Eastern District of New York considered whether *Fogarty* required a stay of claims against non-debtor defendants after the case had been stayed as to the debtor.  *See Norton v. ECP Property II LLC*, No. 24-CV-570, 2026 WL 1004824, at *6 (E.D.N.Y. Apr. 14, 2026).  The *Norton* Court held that it did not, distinguishing *Fogarty* because the debtor in *Fogarty* had "asserted a possessory interest in the property at issue (which was part of her estate)," while the debtor in *Norton* asserted no comparable interest "with respect to any of his co-defendants."  *Id*. As *Norton* recognized, "the bright-line rule announced in *Fogarty* does not apply to the record before us."  *Id*.

12

meaning of [§] 541," their transfer does not violate the automatic stay under § 362).  Accordingly, the Debtor's request for sanctions and related relief is denied.

### B. WHETHER THE AUTOMATIC STAY MAY BE EXTENDED TO THE NON-DEBTOR CORPORATION

Having determined that the Bank Account, as a whole, is not property of the Debtor's estate, the Court next considers whether the automatic stay may nevertheless be extended to J.P.'s Inn.  The Court finds that the automatic stay does not automatically apply to J.P.'s Inn or to property held in J.P.'s Inn's name.  The record, however, presents circumstances that may warrant limited prospective relief to preserve any estate interest the Debtor may have in identifiable personal funds deposited into the Bank Account.

"As a rule, the automatic stay under 11 U.S.C. § 362(a) does not apply to non-debtors." *In re Durr Mech. Constr., Inc.*, 604 B.R. 131, 136 (Bankr. S.D.N.Y. 2019); *see also Nippon Fire & Marine Ins. Co. v. Skyway Freight Sys., Inc.*, 235 F.3d 53, 58 (2d Cir. 2000) ("It is well established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants."); *McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 509-10 (3d Cir. 1997) ("[I]t is universally acknowledged that an automatic stay of proceedings accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the ... debtor.").

The Second Circuit has recognized a limited exception to that rule.  In *Queenie*, the Second Circuit held that the automatic stay may extend to non-debtors in circumstances where a claim against the non-debtor "will have an immediate, adverse economic impact on the estate." *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003).  The *Queenie* Court identified examples of such circumstances, including: (1) a claim to establish an obligation as to which the debtor is a guarantor, *id*. at 287 (citing *McCartney*, 106 F.3d at 510-11); (2) a claim against the debtor's

13

insurer, *id*. at 287-88 (citing *In re Johns-Manville Corp*., 26 B.R. 420, 435-36 (Bankr. S.D.N.Y. 1983)); and (3) actions where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant[.]" *Id*. at 288 (citing *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)).

Applying *Queenie*, this Court held in *Hal Luftig* that the automatic stay may be extended to a non-debtor where enforcement of a judgment against the non-debtor outside the bankruptcy proceeding "would have an immediate adverse impact on the debtor's reorganization efforts." *In re Hal Luftig Co., Inc*., 667 B.R. 638, 658 (Bankr. S.D.N.Y. 2025) (applying the *Queenie* test).[2] In addition to applying the *Queenie* test, the Court conducted the traditional four-factor test for issuing a preliminary injunction, which requires a movant to establish:

> (1) "a likelihood of success on the merits or ... sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor"; (2) a likelihood of "irreparable injury in the absence of an injunction"; (3) that "the balance of hardships tips in the plaintiff's favor"; and (4) that the "public interest would not be disserved" by the issuance of an injunction.

---

[2]    In June 2024, the Supreme Court held in *Purdue Pharma* that the Bankruptcy Code does not authorize non-consensual releases of claims against non-debtors through a Chapter 11 plan. *See Harrington v. Purdue Pharma L.P*., 603 U.S. 204, 204 (2024) ("The bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seek to discharge claims against a nondebtor without the consent of affected claimants."). But *Purdue Pharma* did not address the bankruptcy court's authority to extend stay protection to non-debtors in appropriate circumstances. Post-*Purdue Pharma*, some courts have recognized that non-debtor stay extensions and related injunctive relief remain available where otherwise warranted. *See, e.g., In re Parlement Techs., Inc*., 661 B.R. 722, 724 (Bankr. D. Del. 2024) (holding that *Purdue Pharma* "does not preclude the entry of … a preliminary injunction" extending the stay to non-debtors); *In re Coast to Coast Leasing, LLC*, 661 B.R. 621, 624 (Bankr. N.D. Ill. 2024) (finding that "a temporary restraining order to enjoin creditors from brining claims" against a non-debtor is "distinguishable from the much broader relief sought in *Purdue Pharma*"). In *Hal Luftig*, this Court adopted the same position, holding that *Purdue Pharma* does not alter the bankruptcy court's longstanding authority to extend stay protection to non-debtors, particularly where the extension sought is temporary, limited, and necessary. *See Hal Luftig*, 667 B.R. at 658.

*Hal Luftig*, 667 B.R. at 658 (citing *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015)); *see also In re Parlement Techs., Inc.*, 661 B.R. 722, 724 (Bankr. D. Del. 2024) (noting that "cases have long recognized that bankruptcy courts may enter a preliminary injunction that operates to stay actions against non-debtors").

Courts have also extended the automatic stay to non-debtors in "unusual circumstances" where doing so is "necessary or appropriate" to protect the estate or prevent injustice. *See, e.g.*, *In re Calpine Corp.*, 354 B.R. 45, 49 (Bankr. S.D.N.Y. 2006); *In re McCormick*, 381 B.R. 594, 600 (Bankr. S.D.N.Y. 2008) (noting that, under § 105(a), "courts have extended the protection of the automatic stay to non-debtors who are officers, guarantors, sureties and/or directors of corporations where necessity so required"); *SMF Realty Co. v. Consolini*, 903 F. Supp. 656, 662 (S.D.N.Y. 1995) ("When courts act to extend the automatic stay to a non-debtor, they do so by means of their authority under Section 105(a) of the Bankruptcy Code to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.'"); *In re JZMC Enters., Inc.*, No. 87-01269, 1988 WL 222905, at *5 (Bankr. N.D.N.Y. Sept. 19, 1988) (noting that the "[s]tatutory authority for extending the stay to non-debtors is found in Code § 105"); *A.H. Robins*, 788 F.2d at 999 (holding that the automatic stay could be extended to enjoin civil proceedings against non-debtors in "unusual circumstances"). But the stay does not extend to non-debtors automatically. *See Queenie*, 321 F.3d at 283. Where the stay does not apply by operation of § 362(a), the debtor bears the burden of showing that unusual circumstances warrant extending the stay. *See In re Adelphia Commc'ns Corp.*, 298 B.R. 49, 54 (S.D.N.Y. 2003); *see also In re Third Eighty-Ninth Assocs.*, 138 B.R. 144, 146 (S.D.N.Y. 1992). Whether to extend the stay to non-debtors is a "matter of discretion." *Millard v. Developmental Disabilities Inst., Inc.*, 266 B.R. 42, 44 (E.D.N.Y. 2001); *see also CAE Industries Ltd. v. Aerospace Holdings Co.*, 116 B.R. 31, 32

15

(S.D.N.Y. 1990); *Hal Luftig*, 667 B.R. at 657 (noting that the bankruptcy court may extend the automatic stay to non-debtors pursuant to its equitable authority under § 105(a)).

Ordinarily, stay extension is sought by motion. *See, e.g., In re Richard B. Vance & Co.*, 289 B.R. 692, 697 (Bankr. C.D. Ill. 2003) (holding that "extension of the stay to nonbankrupt parties is not automatic and must be requested affirmatively by the debtor"); *In re Bidermann Indus. U.S.A., Inc.*, 200 B.R. 779, 782 (Bankr. S.D.N.Y. 1996) (holding that "section 362(a)(1) does not apply automatically to stay actions against non-debtors"). Bankruptcy courts, however, have authority in appropriate circumstances to act *sua sponte* with respect to the automatic stay, including to modify or condition the stay. *See, e.g.*, *In re Campbell*, 676 B.R. 464, 486 (Bankr. S.D.N.Y. 2026) (noting that the court "may *sua sponte* modify the automatic stay"); *In re Bagen*, 185 B.R. 691, 701 (Bankr. S.D.N.Y. 1995) (modifying the automatic stay *sua sponte*); *In re Laventhol & Horwath*, 139 B.R. 109, 116 n.6 (S.D.N.Y. 1992) (concluding that the bankruptcy court may, *sua sponte*, modify the automatic stay to allow the litigants to proceed in another forum); *In re Megan-Racine Assocs., Inc.*, 180 B.R. 375, 383 (Bankr. N.D.N.Y. 1995) (holding that the court may, "pursuant to Code § 105(a), *sua sponte* modif[y] the automatic stay"). Any *sua sponte* relief, however, must be grounded in the same limitations that govern non-debtor stay extensions generally: it must be justified by "unusual circumstances," tailored to protect the estate from "immediate adverse economic impact," and subject to the equitable considerations governing preliminary injunctive relief. *See Calpine*, 354 B.R. at 49; *Queenie*, 321 F.3d at 288; *Hal Luftig*, 667 B.R. at 658.

16

Based in part on the supplemental briefing that the Court directed the parties to submit, the Court will consider[3] whether the limited extension of the automatic stay as to the Bank Account is warranted based on the four-factor test applied in *Hal Luftig*.

**(1)    The Likelihood of Success on the Merits**

The first factor weighs in favor of limited stay extension.  In assessing this factor, courts consider the likelihood that the party seeking injunctive relief "will ultimately obtain the same relief at the end of the case."  *Beldock v. Deutsche-Eco USA Corp.*, No. 2:16-CV-14, 2016 WL 8809221, at *5 (D. Vt. Feb. 22, 2016); *see also Graham v. Decker*, 454 F. Supp. 3d 347, 353 (S.D.N.Y. 2020) ("Because … injunctions disrupt the status quo, a party seeking one must meet a heightened legal standard by showing a clear or substantial likelihood of success on the merits."). Because the automatic stay functions as an injunction, courts considering whether to extend the stay to a non-debtor ask whether granting a "breathing spell from [collection efforts] is necessary to permit the debtor" to reorganize. *Hal Luftig*, 667 B.R. at 660-61 (citing *Parlement Techs.*, 661 B.R. at 724).

---

[3]    Although the Debtor has not formally moved to extend the automatic stay to non-debtor J.P.'s Inn, and raised stay extension for the first time in the Supplemental Brief (as directed by the Court), the Court may, as set forth above, extend the stay *sua sponte*.  The Court's authority to modify the stay *sua sponte* is consistent with the text of § 105(a), which provides:

> No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a) (emphasis added).  Courts have consistently held that § 105(a) permits a bankruptcy court to act *sua sponte* in appropriate circumstances. *See, e.g.*, *In re Schuessler*, 386 B.R. 458, 462 (Bankr. S.D.N.Y. 2008) (quoting 11 U.S.C. § 105(a)) ("Section 105(a) permits this Court, *sua sponte*, to take any action or make any determination necessary or appropriate to enforce or implement court orders or rules, or 'to prevent an abuse of process.'"); *In re Grossinger*, 268 B.R. 386, 390 (Bankr. S.D.N.Y. 2001) (noting that § 105(a) permits a bankruptcy court to "*sua sponte* take any action necessary or appropriate to prevent an abuse of process"); *In re Miszko*, 627 B.R. 809, 816 (Bankr. S.D.N.Y. 2021) ("Section 105(a) of the Bankruptcy Code empowers a Court to correct an abuse of process and to do so *sua sponte*.").

17

Here, the Debtor has not formally moved to extend the automatic stay to J.P.'s Inn, but raised stay extension as alternative relief in the Supplemental Brief (as directed by the Court) if sanctions are denied. Nor has the Debtor adequately shown that the Bank Account, as a whole, constitutes property of the Debtor's estate. But the Debtor has raised a legitimate factual dispute as to whether some portion of the funds in the Bank Account is traceable to his personal assets, including insurance settlement proceeds allegedly paid to him and rental payments owed to him. *See Axginc Corp.*, 2022 WL 2135474, at \*1 (holding that the ownership of funds in a disputed bank account is a "triable issue of material fact"); *see also In re Inflight Newspapers, Inc.*, 423 B.R. 6, 10 (Bankr. E.D.N.Y. 2010) (finding that the issue of "whether the diverted funds were property of the Debtor's estate" involves a "genuine issue of material fact"). If those funds are identifiable and traceable, they may constitute property of the estate under § 541(a). Continued enforcement against those funds could have an immediate adverse economic effect on the Debtor's estate. *See Queenie*, 321 F.3d at 287.

The record also supports a finding that preservation of the Bank Account may be necessary to the Debtor's reorganization efforts. The Debtor is the sole owner of J.P.'s Inn and represents that the business is his principal source of income. (Dkt. No. 14). The funds in the Bank Account may include personal funds of the Debtor, and continued dissipation of funds held in that account could materially impair the Debtor's ability to fund a Chapter 13 plan. While the Debtor's commingling of personal and corporate funds is problematic for accounting purposes, the Court need not for these purposes evaluate the propriety of the Debtor's business practices (subject to further briefing and argument of the parties). The relevant issue, at this time, is whether the funds in the Bank Account should be preserved pending a determination of ownership, not whether the Debtor's accounting practices were sound. On this record, the Court finds that extending the stay

18

to non-debtor J.P.'s Inn will increase the Debtor's probability of successfully completing a Chapter 13 reorganization.

### (2)    The Likelihood of Irreparable Injury Absent an Injunction

The second factor also favors limited stay extension. "The irreparable harm requirement is the single most important prerequisite for the issuance of a preliminary injunction." *Marsh & McLennan Companies Inc. v. Howden US Servs., LLC*, No. 1:25-CV-09130 (JLR), 2026 WL 508603, at *11 (S.D.N.Y. Feb. 24, 2026). To show irreparable harm, "the moving party must demonstrate that absent a preliminary injunction [it] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 80 (2d Cir. 2024) (citing *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)). In the bankruptcy context, courts have found "irreparable harm" where "the action sought to be enjoined would embarrass, burden, delay[,] or otherwise impede the reorganization proceeding, or if a stay is necessary to preserve or protect the debtor's estate and reorganization prospects." *In re SVB Financial Group*, No. 23-10367 (MG), 2023 WL 2962212, at *8 (Bankr. S.D.N.Y. Apr. 14, 2023); *see also In re Alert Holdings*, 148 B.R. 194, 200 (Bankr. S.D.N.Y. 1992); *Hal Luftig*, 667 B.R. at 661 (finding irreparable harm where, absent a stay extension protecting the non-debtor, it would be "impossible for the Debtor to carry out the Third Amended Plan and successfully reorganize").

Based on the present record, the Court finds that the Debtor will likely suffer irreparable injury absent a stay extension protecting the Bank Account from further collection efforts. The Debtor represents that the Bank Account contains personal funds, including insurance settlement proceeds relating to a car accident involving the Debtor. (Dkt. No. 14). The Debtor identifies two

19

deposits, made on January 6, 2026, and January 30, 2026, respectively, traceable to those insurance settlement proceeds, although the exact amount of these proceeds has not been established.  (*Id*. Ex. 2).   Given that the Bank Account may contain the Debtor's personal funds and is used in connection with J.P.'s Inn, which the Debtor owns and identifies as his principal source of income, further enforcement against the Bank Account could impair the Debtor's ability to operate the business, generate income, and fund a Chapter 13 plan.  *See In re Kwok*, No. 22-50073 (JAM), 2023 WL 186964, at *20 (Bankr. D. Conn. Jan. 13, 2023) (finding irreparable harm where the "harm [was] to the [d]ebtor's [e]state and the reorganization process itself"); *In re Bidermann*, No. M-47, 1994 WL 376090, at *1 (S.D.N.Y. July 18, 1994) (finding that loss of the debtor's ability to "rehabilitat[e] through reorganization" constitutes "irreparable injury").   Thus, limited stay extension is warranted to prevent further collection activity against the Bank Account pending the Court's determination of whether any portion of the funds in that account constitutes property of the estate.

The Court also finds that any resulting injury may not be adequately remedied by a later damages award.  "An injury that may be fully remedied by monetary damages does not constitute irreparable harm."  *In re 473W. End Realty Corp*., 507 B.R. 496, 507 (Bankr. S.D.N.Y. 2014); *see also In re Giambrone*, 600 B.R. 207, 213 (Bankr. E.D.N.Y. 2019).  Here, the disputed funds may be necessary to fund the Debtor's Chapter 13 plan and preserve the estate while the Debtor attempts to reorganize.  That risk constitutes irreparable harm sufficient to justify limited interim relief.

**(3)   The Balance of Hardships**

The balance of hardships favors preserving funds in the Bank Account pending further determination.  Before issuing an injunction, "a court must consider the balance of hardships between the plaintiff and defendant and issue the injunction only if the balance of hardships tips

in the plaintiff's favor." *Marsh & McLennan*, 2026 WL 508603, at *13 (citing *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010)). In *Hal Luftig*, this Court found that the balance of hardships weighed in favor of granting stay extension to the non-debtor where allowing collection efforts to proceed would undermine the debtor's "productions, reputation in the industry[,] and business contacts" to the detriment of the debtor's ability to reorganize, while "the hardship posed by [a stay extension] to [the creditor] is minimal." *Hal Luftig*, 667 B.R. at 662.

The circumstances that inform *Hal Luftig* are also present here. As explained above, the Debtor will likely suffer irreparable harm. That harm could materially impair the Debtor's ability to fund his Chapter 13 plan. By contrast, the hardship to the Respondents is limited. At this juncture, the Court is not ordering turnover of the Bank Account, adjudicating ownership of the funds, imposing sanctions, or extending the automatic stay to J.P.'s Inn generally. The relief merely preserves funds in the Bank Account pending a further evidentiary determination. *See In re Singer Co. N.V.*, No. 00-10423, 2000 WL 33716976, at *6 (Bankr. S.D.N.Y. Nov. 3, 2000) (citing *Johnson v. Kay*, 860 F.2d 529, 541 (2d Cir. 1988)) (finding that "the balance of hardships decidedly tips in the Debtors' favor" where the preliminary injunction requested "seeks nothing but the preservation of the status quo").

CFG remains free to enforce its rights against non-estate property of J.P.'s Inn other than the funds in the Bank Account. The Marshal's role is limited to levying upon the Bank Account pursuant to the Execution Order, and the Marshal is not required to determine whether any funds in the Bank Account were commingled with funds in which the Debtor may hold an equitable interest. (Dkt. No. 23). *See Truebner Voelbel Co. v. A. Melides & Fils*, 138 N.Y.S.2d 391, 393 (Sup. Ct. N.Y. Cnty. 1954) (noting that a marshal or sheriff's duty is limited to "levy[ing] upon" property of the judgment debtor to satisfy "any debt due … which is specified by the judgment

21

creditor"). Nor is the Bank required, upon receipt of a restraining notice directed at an account held in the name of a judgment debtor, to determine whether a third party has an equitable interest in commingled funds held in that account. *See Aspen Indus., Inc. v. Marine Midland Bank*, 52 N.Y.2d 575, 577 (N.Y. 1981) (holding that a bank served with a restraining notice is required to restrain the account titled in the name of the judgment debtor, but recognizing that the bank's role is limited to compliance with the notice); *see also Cioffari v. Wells Fargo Bank, N.A.*, No. 18 CV 4650 (VB), 2019 WL 130577, at *3 (S.D.N.Y. Jan. 8, 2019) (noting that "there is no requirement that a garnishee bank be required to investigate the validity of a restraining notice served upon it"). Preserving the Bank Account pending a determination of those interests ensures that ownership will be determined by the Court on an adequate record. The balance of hardships therefore favors limited prospective relief.

### (4) The Public Interest

Finally, the Court finds that the public interest factor favors stay extension. "In deciding whether to grant a preliminary injunction, a court must also 'ensure that the public interest would not be disserved by the issuance of a preliminary injunction.'" *Marsh & McLennan*, 2026 WL 508603, at *13 (quoting *Salinger*, 607 F.3d at 80). In the bankruptcy context, "courts have found that removing obstacles to plan formation and promoting a successful bankruptcy reorganization benefit the public interest." *Hal Luftig*, 667 B.R. at 662 (citing *In re Johns-Manville Corp.*, 26 B.R. 420, 428 (Bankr. S.D.N.Y. 1982)); *see also In re Phila. Newspapers, LLC*, 407 B.R. 606, 617 (E.D. Pa. 2009).

Extending the stay on a limited basis serves the public interest here. Preserving the funds in the Bank Account pending a determination of whether any portion constitutes estate property promotes orderly administration of the estate and protects the integrity of the bankruptcy process.

22

*In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 349 (S.D.N.Y. 2007) (noting that "[t]he public interest favors the expedient administration of the bankruptcy proceedings"); *In re Sabine Oil & Gas Corp.*, 551 B.R. 132, 147 (Bankr. S.D.N.Y. 2016) (finding that the public interest favors the "expeditious administration of bankruptcy cases as well as in the preservation of the [debtor's] assets for the purpose of paying creditors"). At the same time, limiting the extension of the automatic stay to the Bank Account respects the general rule that the automatic stay does not extend to non-debtors automatically. *See Durr Mech. Constr.*, 604 B.R. at 136. The relief does not invalidate the State Court Judgment, unwind the Execution Order, or bar CFG from enforcing its rights against non-estate property of J.P.'s Inn.

## V.    CONCLUSION

For the foregoing reasons, the Court finds that the Respondents did not violate the automatic stay by levying on a bank account titled in the name of non-debtor J.P.'s Inn pursuant to the State Court Judgment and Execution Order. The Court further finds that sanctions under § 362(k) are unwarranted because the Debtor has not established that the Respondents willfully acted against property of the estate. The Court also finds, however, that limited prospective relief is appropriate to preserve the Bank Account pending a determination of whether any portion of the funds is property of the estate.

Accordingly, it is hereby **ORDERED** that:

1. The Motion (Dkt. No. 14) is **DENIED** to the extent it seeks civil contempt, sanctions, and turnover of the Bank Account as a whole.

2. The automatic stay under 11 U.S.C. § 362(a) is extended, on an interim and limited basis, to the Bank Account maintained at Alma Bank in the name of J.P.'s Inn, solely

to preserve funds in the Bank Account pending a determination of what portion, if any, of those funds constitutes property of the Debtor's estate under 11 U.S.C. § 541(a).

3. Pending further order of the Court, the Respondents shall preserve the funds in the Bank Account and shall not disburse, transfer, or otherwise dispose of those funds.

4. Nothing in this Order extends the automatic stay to J.P.'s Inn generally, adjudicates ownership of funds in the Bank Account, or precludes CFG from enforcing its rights against non-estate property of J.P.'s Inn other than funds in the Bank Account.

**IT IS SO ORDERED**.

Dated: June 10, 2026
New York, New York

/s/ John P. Mastando III
HONORABLE JOHN P. MASTANDO III
UNITED STATES BANKRUPTCY JUDGE

24